**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| D.R.,<br><br>       Plaintiff,<br><br>       v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>       Defendant. | Civil Action No. 24-9678 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon D.R.'s[1] ("Plaintiff") appeal of the Social Security Administration's ("Defendant") December 22, 2023 denial of her request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("Compl.," ECF No. 1.)  Plaintiff filed an Appeal Brief ("Appeal Br.," ECF No. 7), Defendant filed an Opposition Brief ("Opp'n Br.," ECF No. 11), and Plaintiff filed a Reply Brief ("Reply Br.," ECF No. 12.)  The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]

    After reviewing the parties' submissions and the Administrative Record ("AR," ECF No. 6), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial

---

[1] The Court refers to Plaintiff by her initials given the privacy concerns that arise from social security cases.

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

evidence and that he was properly vested with the authority to render his decision.  Accordingly, the decision to deny Plaintiff DIB will be **AFFIRMED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On April 15, 2022, Plaintiff filed her initial claim for DIB due to having multiple sclerosis, anemia, hypertension, anxiety, and depression, starting from September 22, 2021.  (AR at 17, 20, 59.)

On December 22, 2023, after a hearing,[3] an ALJ denied Plaintiff's applications for DIB.  (*Id.* at 17–29.)  The ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2025, but that she had not engaged in substantial gainful activity since September 22, 2021.  (*Id.* at 20.)  The ALJ found that Plaintiff's multiple sclerosis was severe, but that her anemia, hypertension, anxiety, and depression were not severe.  (*Id.* 20–22.)  The ALJ further found that Plaintiff does not have an impairment that meets the severity of the listed impairments in 20 C.F.R. § 404.  (*Id.* at 22.)  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work (*id.* at 22–28), and that Plaintiff was capable of performing past relevant work as a school secretary (*id.* at 28–29.)  Accordingly, the ALJ found that Plaintiff has not been under a disability.  (*Id.* at 29.)

On August 15, 2024, the Appeals Council denied Plaintiff's appeal of the ALJ's decision, concluding that it "found no reason under our rules to review the [ALJ's] decision."  (*Id.* at 1.)  This appeal followed and Plaintiff alleges in her Complaint that she is disabled and the findings and conclusions of the ALJ are not supported by substantial evidence.  (Compl. ¶ 6.)

---

[3] The hearing took place on December 12, 2023 and can be found in the Administrative Record at pages 36 through 55.

## II.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  In reviewing applications for social security disability benefits, the district court has the authority to conduct a plenary review of legal issues decided by the ALJ.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  To survive judicial review, the Commissioner's decision must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).  In other words, substantial evidence "may be somewhat less than a preponderance of the evidence."  *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record.  *See Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).  The court must "review the record as a whole to determine whether substantial evidence supports a factual finding."  *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).  And "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts

require an "explanation from the ALJ of the reason why probative evidence has been rejected" to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (internal citation omitted).

### B.    APPLICABLE LAW

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)). The analysis proceeds as follows:

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's RFC and analyze whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the final step.

At step five—the final step—the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

III.    **DISCUSSION**

Plaintiff makes two main arguments on appeal:  First, she argues that the ALJ erred at step four in failing to 1) include mental limitations in the RFC finding, and 2) explain why mental limitations were not included.  (Appeal Br. at 14.)  Second, she argues that the ALJ did not reasonably find that Plaintiff can perform the "arduous standing/walking requirements of lightwork." (*Id.* at 3.)  The Court will address each argument in turn.

A.    **WHETHER THE ALJ ERRED AT STEP FOUR**

As set forth above, step four requires the ALJ to determine an applicant's RFC and analyze whether the applicant can perform past relevant work.  20 C.F.R. § 404.1520(e).  If the applicant can perform past relevant work, she is not disabled and the inquiry ends.  20 C.F.R. § 404.1520(f).

In his decision, the ALJ found that Plaintiff has the RFC to "perform light work . . . except she can frequently handle, finger, and feel bilaterally.  The claimant can balance, stoop, kneel, crouch, crawl, and climb stairs, but never climb ladders, ropes, or scaffolds.  She can never work at unprotected heights nor around hazardous, moving mechanical parts." (AR at 23.)  In making this finding, the ALJ considered Plaintiff's symptoms, her testimony at the hearing, and the objective medical evidence and opinions.  (*Id.* at 23–24, 26.)  The ALJ found that she suffered from physical impairments but that her statements "concerning the intensity, persistence, and limiting effects" was not "entirely consistent with the medical evidence." (*Id.* at 25.)  Notably, the ALJ analyzed Plaintiff's consultive examination with a mental health professional and assessed her cognitive limitations.  (*Id.* at 26–27.)  Nonetheless, the ALJ found that Plaintiff has "no more than mild mental functional impairments." (*Id.* at 27.)  Based on the record evidence, the ALJ found that Plaintiff was capable of performing past relevant work as a secretary.  (*Id.* at 28.)

Plaintiff argues that these findings were incorrect because she has mental limitations that affect her ability to work. (Appeal Br. at 15.) Plaintiff disagrees with the ALJ's statement that because "the claimant's mental impairments are nonsevere, the [RFC] does not contain mental limitations." (*Id.* at 16.) Plaintiff contends that the RFC must include the effects of all impairments—severe and non-severe—and that the ALJ erred by not considering Plaintiff's non-severe mental impairments in the RFC analysis (*Id.* at 17–18.) Plaintiff lastly argues that the ALJ erred because consideration of a mental impairment is necessary for skilled jobs, like Plaintiff's. (*Id.* at 19.)

Defendant argues that the ALJ was not required to consider Plaintiff's mild mental limitations at step four. (Opp'n Br. at 7.) Defendant further argues that the ALJ properly, and in detail, analyzed Plaintiff's mental limitations. (*Id.* at 8–10.)

For the reasons set forth below, the Court finds that contrary to Plaintiff's arguments, the ALJ properly accounted for and evaluated Plaintiff's mental limitations, despite stating that "[a]s the claimant's mental impairments are nonsevere, the residual functional capacity does not contain mental limitations." (AR at 28.) As an initial matter, contrary to Plaintiff's contention, there is no legal requirement that a mild limitation mandates a corresponding RFC limitation. *See Silbaugh v. Saul*, Civ. No. 19-1394, 2020 WL 5034140, at *9 (M.D. Pa. July 31, 2020), *report and recommendation adopted,* Civ. No. 19-01394, 2020 WL 5026532 (M.D. Pa. Aug. 25, 2020); *see also Younge v. Berryhill*, Civ. No. 16-5271, 2017 WL 2978758, at *13 (E.D. Pa. May 31, 2017) (affirming denial of benefits where, like here, the ALJ found that a plaintiff had no more than mild mental limitation in social functioning and concentration, had no severe mental impairment at step two, and had no mental limitations in the RFC assessment); *Smith v. Comm'r of Soc. Sec.*, Civ. No. 15-7525, 2016 WL 3912850, at *9 (D.N.J. July 19, 2016) ("The Court disagrees with

Plaintiff's assertion that the ALJ failed to account for Plaintiff's non-severe mental limitations in formulating her RFC."); *Delio v. Comm'r of Soc. Sec.*, Civ. No. 13-78, 2014 WL 4414830, at *4 (W.D. Pa. Sept. 8, 2014) (holding that an ALJ's finding of mild mental limitations at step two, which the ALJ found caused no more than minimal limitations in the plaintiff's ability to perform work, did not need to be accounted for in the ALJ's RFC assessment).

Additionally, when determining the RFC, the ALJ did more than summarize the evidence. After discussing the objective medical evidence and Plaintiff's own testimony, the ALJ concluded that although Plaintiff testified at the hearing and stated to the "examining psychological consultant" that she has limitations with respect to focus, interaction, and adaptation, "she also has acknowledged that she was able to manage her personal finances, read, and watch television and movies." (AR at 25.) The ALJ explained that Plaintiff's "mental allegations are not supported by nor consistent with the mostly benign mental status examination by the examining psychological consultant and the normal mental status findings by the examining neurological consultant." (*Id.*) The ALJ explained that although "the claimant made some errors in tasks requiring memory at the psychological consultative examination, she was nevertheless assessed with a good fund of information and overall average cognition, and the examining consultant opined that she had no limitation with respect to simple instructions and only mild limitation with respect to complex instructions." (*Id.* at 21.) This analysis satisfies the requirements of the Act.

The ALJ also noted that Plaintiff had shown no mental health treatment, which was a factor in his RFC determination. The ALJ then thoroughly examined the medical opinions and explained why certain doctors were persuasive or unpersuasive. Specifically, when discussing the medical report of Dr. Nadine Gardner ("Dr. Gardner"), the mental health expert, the ALJ observed that Plaintiff had "no limitations in understanding, remembering, and carrying out simple instructions;

mild impairments following complex directions, maintaining appropriate social interaction with supervisors, co-workers, and the public; and reacting appropriately to normal work pressure; and moderate impairment in sustaining attention and working at a reasonable pace." (*Id.* at 26.) In making these observations, the ALJ found Dr. Gardner's findings to be only partially persuasive because her conclusion that Plaintiff has moderate limitations was "not supported by her own underlying examination." (*Id.* at 26–27.) The ALJ cited the fact that Plaintiff could "add by sevens, spell the word 'world' backwards, and recall three out of three words after 10 minutes." (*Id.* at 27.) Thus, the ALJ found that the mental limitations are non-severe and not included in the RFC. Plaintiff has failed to demonstrate in light of the totality of the evidence and analysis how this conclusion is not supported by substantial evidence.

The above evidence demonstrates that the ALJ did not fail to consider Plaintiff's mental limitations. It also illustrates that the ALJ did not fail to explain why the mental limitation was not included in the RFC analysis. To the contrary, the ALJ's detailed and thorough analysis of Plaintiff's mental health history demonstrates that he considered her mental health impairments for purposes of the RFC. Insofar as Plaintiff disagrees with specific statements in the ALJ's decision—especially those made at step two—the Court finds that such statements are harmless in light of the ALJ's detailed analysis of Plaintiff's mental health impairments. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (noting that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three" and that "the findings at steps two and three will not necessarily translate to the language used at steps four and five"). Here, the ALJ expressed his findings on Plaintiff's RFC in terms of work-related functions, including describing Plaintiff's ability to understand, remember, and carry out functions. It is true that the ALJ needs to consider all impairments, including those that are not severe, but

**Case 3:24-cv-09678-ZNQ    Document 15    Filed 10/06/25    Page 10 of 14 PageID: 635**

there is nothing in the record before the Court to demonstrate that the ALJ failed to do so. In fact, the record evidences that the ALJ did consider the alleged non-severe impairments. Like in *Hess*, the ALJ highlighted the "mental status examinations and reports," Plaintiff's "activities of daily living," and her "issues or problems completing tasks." *Id.* at 214.

Accordingly, the Court rejects Plaintiff's arguments that the ALJ erred at step four.

### B.    WHETHER THE ALJ ERRED IN FINDING THAT PLAINTIFF CAN PERFORM THE ARDUOUS STANDING/WALKING REQUIREMENTS OF LIGHT WORK

Plaintiff also argues that the ALJ "did not reasonably find that Plaintiff can perform the arduous standing/walking requirements of light work, or work on a regular and continuous basis in light of the record before him." (Appeal Br. at 28.) Specifically, Plaintiff contends that the ALJ inadequately analyzed the medical opinions related to her ability to stand and walk. (*Id.*) Similarly, Plaintiff argues that the ALJ made inconsistent findings when reviewing the medical opinions in the record. (*Id.* at 32.)

Defendant argues that the ALJ properly assessed Plaintiff's physical RFC and adequately explained his assessment of the medical opinions. (Opp'n Br. at 12.) Defendant maintains that the ALJ properly reviewed Plaintiff's hearing testimony, the opinions of the medical doctors, and explained why he found each doctor persuasive or unpersuasive. (*Id.* at 12–16.)

In determining the persuasiveness of medical opinions, the ALJ must assess the persuasiveness of the medical opinions and prior administrative findings based on the five factors enumerated in 20 C.F.R. § 404.1520c. *Lynch v. Comm'r Soc. Sec.*, Civ. No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024). Those factors are 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors when assessing persuasiveness. 20 C.F.R.§ 404.1520c(a). For supportability, "[t]he more relevant the objective medical evidence

and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Additionally, 20 C.F.R. § 404.1520c(b)(1) explains that the ALJ must consider the five factors for "all of the medical opinions and prior administrative medical findings in [Plaintiff's] case record." An ALJ must also articulate how he or she considered supportability and consistency when determining the persuasiveness of each medical opinion; explanation as to the other three factors is not required. *Lynch*, 2024 WL 2237961, at *2.

As stated above, an ALJ's decision, when read as whole, must demonstrate that the appropriate factors were considered and the record must be sufficiently developed—and the findings must be sufficiently explained—to allow for meaningful review. *Id.* The ALJ must explain the reasons for their decisions. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (under the regulations, "administrative judges must always explain the reasons for their decisions. But that does not mean always explaining all the factors"). Notably, if there are opposing medical opinions that are equally well-supported and consistent, then supportability and consistency are not dispositive. *Id.* If so, the ALJ must "articulate how [he or she] considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3).

Here, the Court is fully satisfied that the ALJ properly analyzed the medical opinions and testimony pursuant to the five factors set forth in 20 C.F.R.§ 404.1520c. The ALJ carefully reviewed Plaintiff's symptoms and the objective medical evidence in accordance with 20 C.F.R.

§ 404.1520c.  For example, the ALJ discussed Plaintiff's own testimony and then turned to the objective medical evidence.  (AR at 23.)  His review demonstrated that Plaintiff's "physical examination showed abnormal sensation, but otherwise . . . normal gait and station, normal motor tone and strength, and no tenderness."  (*Id.*)  He explained how Plaintiff's emergency room visit on October 3, 2021 supported the conclusion that there was a steady gait and no acute findings.  (*Id.*)  The ALJ continued to discuss the medical findings of various doctors who each found normal motor tone, a normal gait, and normal coordination.  (*Id.* at 24.)

Therefore, based on the totality of the medical examinations, the ALJ correctly found that Plaintiff's testimony was not entirely consistent with the findings of the doctors.  He explained the noted inconsistencies.  (*Id.* at 25 ("they are inconsistent because although she has alleged debilitating pain and numbness and extreme physical functional limitations, and her longitudinal physical examinations by treating medical providers have shown unspecified decreased sensation, they have also generally shown normal gait and strength and non-focal neurological findings.").)

As to the specific medical opinions, the ALJ thoroughly explained the reasoning for his findings that the doctors were persuasive or unpersuasive.  First, he found Doctor Ronald Bagner, M.D. generally unpersuasive, because that he did not provide a function-by-function assessment of Plaintiff's ability to perform physical work-related activities and because his clinical findings were inconsistent.  (*Id.* at 26.)  The ALJ also found the opinions of Doctors Vaghenag Tarpinian, M.D. and Toros Shahinian, M.D. to be generally persuasive, and those opinions showed that Plaintiff had normal gait and strength.  (*Id.*)  The ALJ found Dr. Gardner only partially persuasive because her conclusion that Plaintiff has moderate limitations was "not supported by her own underlying examination."  (*Id.* at 26–27.)  Finally, the ALJ found Doctor Wanda De Cardona, Ph.D. persuasive but that Doctor Jeff Greenberg, M.D.'s "extreme opinion" that Plaintiff should

avoid moderate exposure to high humidity and all exposure to environmental conditions was unpersuasive because it was inconsistent with his treatment notes, Plaintiff's current medical condition, and most of the visits took place online during telehealth appointments. (*Id.* at 27.)

Given the extensive medical opinions and evidence showing that Plaintiff's ability to walk and stand and perform light work, the Court finds that the ALJ's determination is supported by substantial evidence in the record. Further, the ALJ carefully articulated how he found certain opinions more persuasive than others. Plaintiff's argument that the ALJ's analysis was improper is not supported by the record. *See Emilia N. v. Comm'r of Soc. Sec.*, Civ. No. 21-18677, 2022 WL 14834594, at *4 (D.N.J. Oct. 26, 2022) (finding that the ALJ "clearly satisfied her principal obligation" by giving "'some indication' of the evidence she rejects and her reason for doing so." (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000))); *see also Zaborowski*, 115 F.4th at 639 (affirming an ALJ's decision when the ALJ "weave[d] supportability and consistency throughout her analysis of which doctors were persuasive"); *Annette S. v. Comm'r of Soc. Sec.*, Civ. No. 21-10614, 2022 WL 2304771, at *8 (D.N.J. June 27, 2022) (finding that the ALJ "properly provided supporting explanations in affording less weight to the medical opinions" of certain doctors). Notably, and as is the case here, the ALJ need not agree with a physician's conclusions. *See Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) ("While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." (alteration in original)).

In short, Plaintiff has enough information from the ALJ's analysis of the medical opinions to ascertain the basis for his rejection, *Emilia N.*, 2022 WL 14834594, at *4 ("[t]he touchstone is whether the reviewing court has sufficient information to understand the ALJ's basis for

rejection"), and the Court will not re-weigh the evidence simply because Plaintiff disagrees with the ALJ's analysis of the medical opinions. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (the court should not "weigh the evidence or substitute its conclusions for those of the fact-finder").

Accordingly, Plaintiff's argument that the ALJ's findings based on the medical opinions were erroneous fails.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **AFFIRM** the ALJ's decision. An appropriate Order will follow.


Date: October 6, 2025


                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**